IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CHRISTOPHER LAURAY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>TRIAGE PARTNERS, LLC<br><br>    Defendant. | Case No.: |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**INTRODUCTION**

1. This is an action brought on behalf of individuals who have worked as cable technicians for Triage Partners, LLC ("Triage"), challenging Triage's failure to pay them overtime, and failing on many weeks to pay them all wages due, and challenging their unlawful misclassification as independent contractors instead of employees. Triage contracts with internet and cable providers such as Frontier Communications to perform cable and internet installation and repair services across the United States. Triage controls, supervises, and directs the manner in which its technicians perform these services. The technicians' services are integral and central to Triage's business. Moreover, the technicians are economically dependent on Triage to assign their work, and the technicians do not operate independently established businesses.

2. Plaintiff Christopher Lauray asserts claims under the federal Fair Labor Standards Act ("FLSA") on behalf of himself and all others similarly situated who performed such cable installation and repair services for Triage, and who were misclassified as independent contractors instead of employees, seeking remedies for minimum wage and overtime violations resulting from this misclassification.

3. Plaintiff also asserts claims under Ohio law on behalf of himself and all individuals who performed cable installation and repair services for Triage in Ohio during the past three years, and who were classified by Triage as independent contractors.

4. Plaintiff also brings an individual claim under the FLSA, 29 U.S.C. § 215(a)(3), for retaliation. Specifically, as detailed below, Triage terminated Plaintiff in retaliation for complaining about Triage's failure to pay him all wages due.

## PARTIES

5. Plaintiff Christopher Lauray is an adult resident of Detroit, Michigan. From approximately February to November 2025, Plaintiff worked as a cable technician, performing cable installation and repair work for Triage and at Triage's direction in Michigan and Ohio. During the relevant time, Lauray was an employee of Triage under the FLSA, as well as Ohio law. Plaintiff's Notice of Consent is attached as Exhibit A.

6. Plaintiff brings this action on his own behalf and on behalf of all similarly situated individuals who worked as cable technicians for Triage in the United States during the past three years, and who were classified as independent contractors.

7. Defendant Triage LLC ("Triage") is a corporate entity, organized in Delaware, with its headquarters (principal place of business) in Tampa, Florida. Upon information and belief, Triage conducts its business throughout the United States.

8. Triage is engaged in interstate commerce and employs individuals engaged in interstate commerce and is therefore covered by the FLSA, and Triage is an "employer" as that term is defined in the FLSA.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331.

10. The Court also has jurisdiction over the FLSA claims asserted in this matter pursuant to 29 U.S.C. § 216(b).

11. The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case and controversy.

12. Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a) and (b), because Defendant has its headquarters in Tampa, Florida, in this District, a substantial part of the events giving rise to this action, including decisions regarding Plaintiff's and other cable technicians' classification and compensation, occurred in this District, and Defendant is subject to personal jurisdiction in this District.

## FACTS

13. Triage offers a wide range of cable installation and repair services for companies such as Frontier Communications throughout the United States.

14. In order to provide its services, Triage employs cable technicians like Plaintiff. Upon information and belief, there were at least a hundred technicians working for Triage across the United States at the same time as Plaintiff.

15. Although Triage classified its technicians as independent contractors, these technicians are employees as a matter of law under the federal Fair Labor Standards Act, as well as under Ohio law.

16. The work of Plaintiff and other technicians falls squarely within Triage's usual course of business. Indeed, Plaintiff and other technicians are central to Triage's core business as a telecom and cable service company.

17. Plaintiff and other technicians are not engaged in independently established trades, occupations, professions, or businesses. Rather, the technicians rely upon Triage to negotiate with customers, such as Frontier Communications, and to assign work to the technicians.

18. Triage controls the work performed by Plaintiff and other technicians by assigning their work to them, setting a work schedule, setting rules and requirements for the technicians' work and maintaining detailed records of the work performed by technicians, determining the technicians' pay rate and structure, and retaining the authority to withhold payment from, or to terminate any technicians whose work is unsatisfactory.

19. Plaintiff was assigned by Triage to perform installation and repair services for Triage's client, Frontier Communications.

20. Plaintiff worked for Triage out of Triage's facilities in Davidson, Michigan, St. John, Michigan, DeWitt, Michigan, and Oberlin, Ohio.

21. Each morning, at 7 AM, Plaintiff was required to go to a Frontier online portal to view his job assignments. Each job assignment had an associated timeframe, either "AM" (8-12) or "PM" (1-5), and Plaintiff was required to complete each of his assignments within the designated timeframe.

22. Upon completing his job assignments, Plaintiff had to enter the billing code and equipment used for each job on Triage's website.

23. Triage paid Plaintiff on a piece rate basis – that is, Plaintiff was to receive a set rate for each installation or repair task. Triage unilaterally set Plaintiff's pay rate. Upon information and belief, other technicians working for Triage were also paid a piece rate for installations, and were not paid overtime, even though they regularly worked more than 40 hours a week.

24. Plaintiff worked for Triage from approximately 8AM to 6 PM, from Monday through Saturday, working 60-70 hours each week.

25. Although Plaintiff routinely worked more than 40 hours a week, he was not paid time-and-a-half for hours worked in excess of 40 a week.

26. Triage's misclassification of its technicians as independent contractors, and the additional violations described above, were willful and undertaken in bad faith.

27. In or around September 2025, Plaintiff complained to his supervisor, Michael Hutchinson, about not receiving compensation for all the jobs he performed

for Triage. Plaintiff did not receive a response. Plaintiff complained to Mr. Hutchinson again about this issue in October 2025. Mr. Hutchinson responded that he would send someone to check on this issue. Plaintiff then began submitting pictures of all work he completed to the billing website. Several days later, on October 20, 2025, Mr. Hutchinson informed Plaintiff that he was terminated.

## COLLECTIVE ACTION ALLEGATIONS

28. Plaintiff brings Count I of this case as a collective action on behalf of all individuals who performed cable installation and repair services for Triage in the United States during the past three years, and who were classified by Triage as independent contractors.

29. Plaintiff's FLSA claims should proceed as a collective action on behalf of all similarly situated technicians in the United States.

30. All potential opt-in Plaintiffs worked pursuant to the common misclassification scheme described above under which Triage did not provide any overtime premium when technicians worked more than forty hours per week, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## COUNT I
### FAIR LABOR STANDARDS ACT–FAILURE TO PAY OVERTIME
### (ON BEHALF OF PLAINTIFF AND THE FLSA COLLECTIVE)

31. All previous paragraphs are incorporated as though fully set forth herein.

32. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d).

33. Triage is subject to the wage requirements of the FLSA because Triage is an "employer" under 29 U.S.C. § 203(d).

34. At all relevant times, Triage has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

35. During all relevant times, Plaintiff and the FLSA Collective Members have been covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

36. Plaintiff and the FLSA Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

37. Triage, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiff and the FLSA Collective Members for all their overtime hours worked by misclassifying Plaintiff and the FLSA Collective as independent contractors.

38. Triage knowingly failed to compensate Plaintiff and the FLSA Collective Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

39. In violating the FLSA, Triage acted willfully and with reckless disregard of clearly applicable FLSA provisions.

40. In violating the FLSA, on information and belief, Triage did not have any good faith basis to rely on any legal opinion or advice to the contrary.

## OHIO CLASS ACTION ALLEGATIONS

41. Plaintiff brings Count II of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all individuals who performed cable installation and repair services for Triage in Ohio during the past three years, and who were classified by Triage as independent contractors.

42. Although Plaintiff routinely worked 10 hours a day, six days a week for Triage, was paid only a set piece rate for each task performed and did not receive time-and-a-half for hours worked in excess of 40 a week.

43. The members of the Ohio Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Ohio Class.

44. Plaintiff will fairly and adequately represent and protect the interests of the Ohio Class because there is no conflict between the claims of Plaintiff and those of the Ohio Class, and Plaintiff's claims are typical of the claims of the Ohio Class.

Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

45. There are questions of law and fact common to the proposed Ohio Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Triage has violated and continues to violate Ohio law through its policy or practice of not paying its technicians overtime compensation.

46. Plaintiff's claims are typical of the claims of the Ohio Class Members in the following ways, without limitation: (a) Plaintiff is a member of the Ohio Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Ohio Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Ohio Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Ohio Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Ohio Class Members.

47. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Ohio Class predominate over any questions affecting only individual Class Members.

48. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and

expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Ohio Class Members are readily identifiable from Triage's own records. Prosecution of separate actions by individual members of the Ohio Class would create the risk of inconsistent or varying adjudications with respect to individual Ohio Class Members that would establish incompatible standards of conduct for Triage.

49. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Ohio Class Members, while substantial, are not great enough to enable them to maintain separate suits against Triage.

50. Without a class action, Triage will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff and the Ohio Class. Plaintiff Farr envisions no difficulty in the management of this action as a class action.

## COUNT II
## O.R.C. 4111.03 – FAILURE TO PAY OVERTIME
## (BROUGHT ON BEHALF OF PLAINTIFF AND THE OHIO CLASS)

51. All previous paragraphs are incorporated as though fully set forth herein.

52. Ohio Revised Code ("O.R.C.") § 4111.03 requires employers to pay employees overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek.

53. At all relevant times, Triage was an "employer" within the meaning of O.R.C. § 4111.03.

54. At all relevant times, Plaintiff and Ohio Class Members were "employees" covered by O.R.C. § 4111.03.

55. Pursuant to O.R.C. § 4111.10, CSI is liable to Plaintiff and Ohio Class Members for the full amount of their unpaid overtime compensation, and for attorneys' fees and costs.

56. Any agreement between Plaintiff and Ohio Class Members and Triage to work for less than the overtime wage rate is no defense to Plaintiff's action under O.R.C. § 4111.03.

## COUNT III
## FAIR LABOR STANDARDS ACT–RETALIATION
## (ON BEHALF OF PLAINTIFF)

57. All previous paragraphs are incorporated as though fully set forth herein.

58. The FLSA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3).

59. Plaintiff complained to his supervisor about Triage's failure to pay him all wages due. Shortly after making this complaint, Plaintiff was terminated.

60. Triage's actions in terminating Plaintiff were a direct response to Plaintiff making a complaint about Triage's wage practices, and thus constitute impermissible retaliation in violation of the FLSA, 29 U.S.C. § 215(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this honorable Court to enter the following relief:

    a.    An order granting certification of this case as an FLSA collective action, and permitting notice to be sent to potential Opt-in Plaintiffs;

    b.    An order certifying, under Rule 23, the Ohio class in this case, appointing Plaintiff as class representative and Plaintiff's counsel as class counsel;

    c.    An award of damages for all unpaid wages, resulting from Defendant's misclassification, as described above;

    d.    Statutory liquidated damages;

    e.    Attorneys' fees and costs; and

    f.    Such other legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as of right.

Dated: December 18, 2025

        Respectfully submitted,

        /s/ Jason L. Gunter
        Jason L. Gunter
        Fla. Bar No. 0134694
        Email: Jason@GunterFirm.com
        Conor P. Foley
        Fla. Bar No. 111977
        Email: Conor@GunterFirm.com
        Peter M. Jennings
        Fla. Bar No. 1054512
        Email: Peter@GunterFirm.com
        **GUNTERFIRM**
        2165 W. First St., #104
        Fort Myers, FL 33901
        Tel: 239.334.7017

        and

        Harold L. Lichten (*pro hac vice anticipated*)
        Olena Savytska (*pro hac vice anticipated*)
        **LICHTEN & LISS-RIORDAN, P.C.**
        729 Boylston St., Suite 2000
        Boston, MA 02116
        (617) 994-5800
        hlichten@llrlaw.com
        osavytska@llrlaw.com